23-4082

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

### *for the*

# 𝔉𝔬𝔲𝔯𝔱𝔥 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

UNITED STATES OF AMERICA,

*Plaintiff–Appellee,*

– v. –

JAMES GORDON MEEK,

*Defendant–Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA

## MEMORANDUM BRIEF OF APPELLANT

EUGENE V. GOROKHOV
BURNHAM & GOROKHOV PLLC
1424 K Street, NW, Suite 500
Washington, DC 20005
(202) 386-6920

*Counsel for Appellant*

 COUNSEL PRESS • VA – (804) 648-3664

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION .................................................................................. 1

JURISDICTION ..................................................................................... 1

STATEMENT OF FACTS ....................................................................... 1

    A.    The Charge and the Initial Detention Hearing ....................................... 1

    B.    The Government's Appeal to the District Court ................................... 2

    C.    The District Court Hearing .................................................................. 6

    D.    The District Court's Reasoning ........................................................... 13

ARGUMENT ....................................................................................... 14

    I.    STANDARD OF REVIEW ................................................................. 14

    II.    APPLICABLE LAW: THE BAIL REFORM ACT ............................ 15

    III.    THE DISTRICT COURT FAILED TO APPLY THE CORRECT LEGAL STANDARD IN REVOKING THE MAGISTRATE'S ORDER OF RELEASE ......................................... 20

    IV.    THE DISTRICT COURT FAILED TO MAKE THE FINDINGS REQUIRED BY THE BAIL REFORM ACT .................................... 21

    V.    THE DISTRICT COURT DETAINED MR. MEEK ON IMPERMISSIBLE GROUNDS ......................................................... 24

CONCLUSION ..................................................................................... 27

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

## CASES

*D.B. v. Cardall*,
  826 F.3d 721 (4th Cir. 2016) ..........................................................................21

*Gilbane Bldg. Co. v. Fed. Res. Bank of Richmond*,
  80 F.3d 895 (4th Cir. 1996) ...........................................................................15

*Miller v. Mercy Hosp., Inc.*,
  720 F.2d 356 (4th Cir. 1983) .........................................................................27

*United States v. Alatishe*,
  768 F.2d 364 (D.C. Cir. 1985)...................................................................16, 17

*United States v. Benjamin Moser*,
  No. 1:08cr258-TSE .........................................................................................8

*United States v. Blauvelt*,
  No. Crim. WDQ-08-0269,
  2008 WL 4755840 (D. Md. Oct. 28, 2008) ...................................................18

*United States v. Chimurenga*,
  760 F.2d 400 (2d Cir. 1985) ..........................................................................23

*United States v. Dean Cheves*,
  No. 1:21cr177-CMH.........................................................................................8

*United States v. Dominguez*,
  783 F.2d 702 (7th Cir. 1986) ...............................................................*passim*

*United States v. English*,
  629 F.3d 311 (2d Cir. 2011) ..........................................................................16

*United States v. Gamble*,
  No. 20-3009,
  2020 U.S. App. LEXIS 11558 (D.C. Cir. Apr. 10, 2020) ............................16

*United States v. Gamble*,
  810 F. App'x 7 (D.C. Cir. 2020) ...................................................24

*United States v. Goforth*,
  546 F.3d 712 (4th Cir. 2008) .......................................................14

*United States v. Jackson*,
  845 F.2d 1262 (5th Cir. 1988) .................................................17, 18

*United States v. Jessup*,
  757 F.2d 378 (1st Cir. 1985),
  *abrogated on other grounds by United States v. O'Brien*,
  895 F.2d 810 (1st Cir. 1990).................................................*passim*

*United States v. Khusanov*,
  731 F. App'x 19 (2d Cir. 2018) ...................................................16

*United States v. King*,
  119 F.3d 290 (4th Cir. 1997) .......................................................15

*United States v. Manuel Delgado*,
  No. 1:17cr11-JCC ..........................................................................8

*United States v. Moss*,
  887 F.2d 333 (1st Cir. 1989)........................................................16

*United States v. Motamedi*,
  767 F.2d 1403 (9th Cir. 1985) .....................................................26

*United States v. Portes*,
  786 F.2d 758 (7th Cir. 1985) .......................................................16

*United States v. Sameer Nanda*,
  No. 1:10cr436-AJT ........................................................................8

*United States v. Sher Jaghori*,
  No. 1:13cr451-AJT ........................................................................8

*United States v. Stewart*,
  19 F. App'x 46 (4th Cir. 2001).....................................................18

*United States v. Stone*,
    608 F.3d 939 (6th Cir. 2010) ...........................................................16

*United States v. Suppa*,
    799 F.2d 115 (3d Cir. 1986) ............................................................16

*United States v. Taylor*,
    No. 1:21-CR-392-RCL-2,
    2021 WL 3552166 (D.D.C. Aug. 11, 2021) ..................................25

*United States v. Wilks*,
    15 F.4th 842 (7th Cir. 2021) ...............................................16, 17, 18

*United States v. Wooden*,
    693 F.3d 440 (4th Cir. 2012) .......................................................24

## STATUTES

18 U.S.C. § 2252(a)(1)...........................................................................1

18 U.S.C. § 3142 ..................................................................*passim*

18 U.S.C. § 3142(e) ...........................................................................17

18 U.S.C. § 3142(e)(1) .......................................................................15

18 U.S.C. § 3142(e)(3) .......................................................................21

18 U.S.C. § 3142(e)(3)(A) ..................................................................15

18 U.S.C. § 3142(g) .............................................................*passim*

18 U.S.C. § 3142(g)(3)........................................................................17

18 U.S.C. § 3142(g)(4)........................................................................25

18 U.S.C. § 3142(j) .............................................................................24

18 U.S.C. § 3145(c) .......................................................................1, 14

18 U.S.C. § 3231 ...................................................................................1

28 U.S.C. § 1291 ...................................................................................1

**OTHER AUTHORITIES**

Alison Siegler, *Freedom Denied: How the Culture of Detention Created a Federal Jailing Crisis* 38 (2022), available at https://freedomdenied.law.uchicago.edu/ ................................................20

S. Rep. No. 98-225 *as reprinted in* 1984 U.S.C.C.A.N. 3206.................................18

## INTRODUCTION

Defendant-Appellant James Meek respectfully asks this Court to reverse the district court's February 6, 2023 detention order because the district court applied an erroneous "super-presumption" of detention contrary to 18 U.S.C. § 3142 ("the Bail Reform Act"), failed make the required findings and explain its reasoning, and relied solely on past dangerousness to detain Mr. Meek. For the reasons that follow, this Court should vacate the detention order and remand for a new bail hearing.

## JURISDICTION

The district court has jurisdiction over this federal criminal case pursuant to 18 U.S.C. § 3231. The magistrate judge ordered Mr. Meek's release on conditions on February 1, 2022. JA11-15. The district court revoked the release order on February 6. 2023. JA98. Mr. Meek noted his appeal on February 10, 2023. ECF 32. This Court has jurisdiction to hear this appeal pursuant to 18 U.S.C. § 3145(c) and 28 U.S.C. § 1291.

## STATEMENT OF FACTS

### A. The Charge and the Initial Detention Hearing.

On April 27, 2022, the FBI searched Mr. Meek's residence in Arlington, Virginia, pursuant to a warrant. On January 31, 2023, Mr. Meek was charged by criminal complaint with one count of transporting child pornography in violation of 18 U.S.C. § 2252(a)(1). ECF 1. He made his initial appearance before the magistrate

judge on February 1, 2023.  ECF 13.  Mr. Meek's detention hearing was held on the same day.  *Id*.  Pretrial Services recommended Mr. Meek's release on conditions, including home confinement, GPS monitoring, and computer restrictions with monitoring.  ECF 10.  After hearing the evidence presented by the government and Mr. Meek,[1] the magistrate judge ordered Mr. Meek's release subject to the conditions set forth in the pretrial report, and additional conditions.

The government noted its appeal and sought a stay of the release order, which was granted.

## B. The Government's Appeal to the District Court.

Prior to hearing the government's appeal, the district court permitted the parties to submit briefs, limited to five pages per brief.

The government's submission focused on Mr. Meek's danger to the community and presented the complaint affidavit as an exhibit.  The government argued that Mr. Meek should be detained based on evidence that he possessed child sexual abuse materials ("CSAM") on multiple devices and accounts seized by the government, indicating that the weight of the evidence was strong.  JA17-19.  The government stated that it had evidence that Mr. Meek engaged with others online to trade CSAM, and alleged that Mr. Meek engaged in sexual conversations with

---

[1]     Because this evidence was substantially the same at both hearings, we discuss it in detail with respect to the proceedings before the district court.

2

minors online and sought sexually explicit materials from these minors.   The government represented that Mr. Meek "had CSAM on his devices dating back to at least 2014, and electronic records indicated that he was saving CSAM onto his hard drive as recently as at least January 2022, just a few months before the search of his residence.  JA18-19.  The government also focused on the harm that results to minor victims from the crime charged.  JA19.

The government acknowledged Mr. Meek's "standing in and contribution to the community," but urged the court to discount these factors because they existed "while [Mr. Meek was] engaging" in the alleged offenses.  JA20. The government did not address Mr. Meek's conduct during the eight months after his home was searched.

Finally, the government argued that Mr. Meek "may also pose a danger to himself" because he allegedly told FBI agents searching his home in April 2022 that "his life was over" and he subsequently quit his job and moved out of his home.[2]

---

[2]     The FBI 302 report relating to the events of the search, which defense counsel only obtained after the district court hearing, does not make any reference to such a statement.  Instead, it says that "Meek stated whether or not the allegations were true or not if the information in the search warrant was public his career was over and this [referring to his apartment] was gone." Despite this, the government continued to argue that Mr. Meek was a danger to himself.

The government also noted Mr. Meek's "familiarity and comfort" with firearms as a reason to deny him pretrial release.[3]

In his response, Mr. Meek acknowledged that the allegations were serious but noted he had not yet received discovery and that the weight of the evidence could not be reliably determined because it was not subject to adversarial testing. JA39-40. Mr. Meek urged the court to consider what was *not* alleged: that Mr. Meek ever physically met or tried to meet a child for improper purposes. JA40. Mr. Meek cited numerous cases in which the district court released individuals who engaged in physical sexual abuse of children, or were on their way to do so, but nevertheless were released subject to conditions. *Id*.

Mr. Meek presented substantial evidence regarding his background and his ties to the community, specifically: that he is 53 years old and has spent most of his life in Northern Virginia, that both of his daughters reside in this area; that Mr. Meek resides with his mother who has lived in locally since 1963, and that Mr. Meek has other significant personal and professional ties to this area. He has no prior convictions or arrests. JA37-39. Mr. Meek also offered evidence of his stable employment as an investigative journalist for over 30 years, most recently with ABC News, reporting on issues including criminal justice, national security, government

---

[3]     The government did not address the fact that Mr. Meek voluntarily relinquished possession of his firearms.

corruption, war, hostages, torture, human rights abuses, terrorism, and other issues of national and international significance. JA38. He presented evidence of his professional recognitions. JA38, n.2, 3 & 5. Mr. Meek also offered evidence of his extraordinary good works, including helping Gold Star Families investigate the deaths of their loved ones, bringing attention to the cases of hostages, and most recently helping to rescue over 700 Afghan refugees (including four US citizens), resulting in him being awarded the James W. Foley Press Freedom Award. JA38-39.

Mr. Meek also offered evidence to show that he would abide by the conditions of release based on his conduct since April 27, 2022—the date his home was searched by the FBI. Although not subject to any restrictions on his freedom and under no obligation to inform the government of his actions, Mr. Meek stayed in the area and notified the government that he moved in with his mother; volunteered to surrender his passport to the government; relinquished possession of his lawfully owned firearms; maintained close ties with his family and supported his 15-year old daughter, and continued to work on a freelance basis after resigning from his job. JA40-41. Contrary to the government's claims that he was a danger to himself, Mr. Meek demonstrated the opposite by continuing to serve the community by volunteering at an organization for homeless veterans. JA41. Mr. Meek also focused on his physical and mental health, and sought religious guidance. *Id*. Mr. Meek

noted that he was not a danger to himself, but instead resigned from his ABC News position because of the investigation, and moved out of his apartment because he no longer had the income from his job. Mr. Meek did all of these things despite his under-investigation status being public. JA41 n.8.

Mr. Meek also submitted letters to the court from members of the community who knew him well, including a former head of the FBI National Security Law Section, a former FBI special agent of 28 years, and a former police officer of 27 years. JA40; JA44-52. All of these individuals knew that Mr. Meek was charged with a child pornography offense but nevertheless urged the court to release Mr. Meek pending trial. *Id.*

**C. The District Court Hearing.**

Prior to hearing argument from the parties, the district court asked for clarification on allegations that Mr. Meek communicated with minors online. FBI Agent Tonya Griffith testified for the government. JA59-60. Agent Griffith was asked whether "Individual 1" and "Individual 2" were minors, and answered that they are not. On questioning by the court, Agent Griffith testified that the conversations between a username alleged to be Mr. Meek's and individuals believed to be minors were one-on-one conversations. JA61. The agent testified that she had personal contact with only one person who was identified as a minor. *Id.*

6

On questioning by the defense, Agent Griffith testified that she has only been assigned to the case "the last few months" and did not conduct the search or forensic imaging of any devices seized in the case. *Id.* at 10-12.

The court then asked Agent Griffith if she spoke with anyone about the allegations that Mr. Meek said that his "life was over." JA64. Agent Griffith stated that she had not. On redirect, the government clarified through questioning that the statement was allegedly made by Mr. Meek during the search of his home. JA64-65.

The government began its argument by emphasizing the seriousness of the charge, and that the alleged conduct was not limited to one count of transportation of child pornography. JA65. The court agreed, but asked the government to address the fact that—since the time of the search—Mr. Meek has not tried to flee or hide where he is, and has stayed with his mother. JA66. The government clarified that it was not focusing on the risk of flight, and explained that the delay in charging was due to the "numerous devices" and "large volume of data involved in reviewing the content of those devices." JA66-67. Beyond this, the government did not address Mr. Meek's cooperative conduct in the months after the search.

The court asked the government about cases cited by the defense relating to "similarly situated" defendants. JA67. The government responded that many other "similarly situated" defendants have been detained, and argued this case required

detention because it involved allegations of online exploitation of children which "is a real harm to the community." *Id*. In the defense argument, counsel pointed out that the cases cited where defendants were released did not involve "similarly situated" defendants at all—they involved individuals whose conduct involved contact sexual offenses or an intent to engaged in such offenses. JA79; see also JA40 n.7 (citing *United States v. Manuel Delgado*, No. 1:17cr11-JCC (defendant engaged in sexual intercourse with a 13-year-old and was released on conditions) (ECF 2 (affidavit); ECF 11 (release order)); *United States v. Dean Cheves*, No. 1:21cr177-CMH (US Diplomat who engaged in sexual intercourse and produced videos of the sexual abuse of the minor, released on conditions) (ECF 2 (affidavit); ECF 17) (release order)); *United States v. Benjamin Moser*, No. 1:08cr258-TSE (defendant traveled to meet a 13-year old for sex in an undercover sting, released on conditions) (ECF 2 (affidavit; ECF 7 (release conditions); *United States v. Sher Jaghori*, No. 1:13cr451-AJT (defendant produced child pornography images by photographing an 11 or 12 year old family member, ordered released on conditions) (ECF 2 (affidavit); ECF 16 (release conditions); *United States v. Sameer Nanda*, No. 1:10cr436-AJT (defendant engaged in sexually explicit chats and traveled to meet what he believed to be a 13-year-old in a sting operation, released on conditions) (ECF 2 (affidavit); ECF 25 (conditions of release)).

The court also asked the government about Mr. Meek's "standing in the community," referring to his work in helping and supporting Gold Star families, and the families of hostages. JA68. The government argued that while this is "relevant," the fact that his criminal conduct is alleged to go back to "at least 2014" and "just doesn't have an effect on his engagement in criminal activity" because he was able to commit the alleged crimes and conceal them from other people. JA68-69. The court appeared to be persuaded by the government's argument to discount Mr. Meek's § 3142(g) evidence because he stood charged with a serious crime and "lost his way." JA77 ("I think we can all agree the things that Mr. Meek has done are heroic, no doubt about it. But even heroic people can lose their way, and that's, I believe, what the government is suggesting here."). JA77. Defense counsel responded by pointing out that all defendants are alleged to have committed crimes, but the Court must nevertheless follow 18 U.S.C. § 3142(g) and give weight to their background, work history, community ties, etc. JA77 ("[I]f [the government's] argument held any water, then it would invalidate an entire section of the Bail Reform Act because every individual who comes before the Court, the Court has to consider their background, history, and characteristics. And if the government's argument were true, the Court could simply say, yeah, but he was doing crimes so I'm not going to consider those things.").

The court questioned the government about letters presented in support of Mr. Meek by individuals who asserted the opinion that Mr. Meek would abide by conditions of pretrial release, including long-serving members of law enforcement. JA 69. The government urged the court to discount this evidence because they "didn't know he was engaged in this behavior in the first place." JA69-70.

The court then stated that Mr. Meek was subject not merely to a presumption, but to a "super-presumption" of detention. JA70. The court also stated that Congress imposed a "strong presumption" of detention in cases such as this one. JA71. Defense counsel argued that the defendant's burden to rebut the presumption of detention was not heavy, JA70-72, and that Mr. Meek far exceeded his burden of production in this case by coming forward with "overwhelming" evidence that he would abide by the conditions of pretrial release. JA72.

The court asked defense counsel if he had any response to the factual allegations. JA72-73. Defense counsel explained that he had not had a chance to investigate the facts or review discovery, so there was no meaningful adversarial process as to the allegations. JA73. Defense counsel urged the court consider that Mr. Meek is not even alleged to have met a child or attempted to meet a child in real life, which defeats the notion that he was "grooming" minors. JA73-74. "[I]f they say the conduct goes back to 2014 and have absolutely zero evidence and not even an allegation that he tried to meet a child, I think that -- I think the conclusion there

is -- it was never his intention to meet a child . . . I think the fair conclusion there is

not that he was preparing after nine years to finally go meet a child. I think the

conclusion is that that was never his intention . . ." JA74.  The district court stated

that "I'm assuming [the government] is going to come back with is that because of

the nature of this kind of offense that one could argue, again, looking at allegations

here, that Mr. Meek, according to the government, was starting to begin the process

of acting on his fantasies." JA75.

Defense counsel then discussed the "overwhelming evidence" that Mr. Meek

put forward regarding his background, lack of criminal record, ties to the

community, community support, his record of humanitarian work, his conduct in the

months after the search of his home, and other factors that were strong evidence that

Mr. Meek would abide by the conditions set by the court. JA77-82.  Defense counsel

also urged the court not to detain Mr. Meek based on the fact that the alleged offense

involved computers because, according to the Pretrial Office, Mr. Meek's computer

use could be closely monitored. JA82-83.  Furthermore, the government's position

would effectively write an entire category of defendants out of the Bail Reform Act.

JA83.  The court expressed concern that Mr. Meek could possibly circumvent the

conditions of release because a "probation officer can't be with him 24/7." JA83.

In response, defense counsel urged that the legal standard did not require a guarantee,

but only a "reasonable assurance" of compliance. JA84.  Defense counsel also urged

that Mr. Meek met this standard with a strong showing that he would abide by the conditions of release. *Id.*

In rebuttal, the government acknowledged that there was no allegation that Mr. Meek ever attempted to meet a child but that "grooming" is not limited to physical contact. JA85-86. The government argued that Mr. Meek is an "original abuser" because of the allegations of online exploitation. JA86. The government further urged the court not to give any weight to Mr. Meek's conduct since the search because while the government did not have any evidence, it could theoretically be possible that he committed crimes online in the period since the search: "The fact is that we don't know what he's been doing online since that time. So I don't think we can say that just because we haven't caught him doing something in the last period doesn't mean he's not a continuing harm to the community even in the intervening nine months or whatever the period is." JA86-87. The government argued that it took a long time to obtain and review the devices as issue, which explained the delay from the time of the search and the fact that Mr. Meek was charged by complaint. JA88. The government disagreed that its claim regarding computer crimes would invalidate release for all similar defendants, urging the court to detain Mr. Meek because he was "an original abuser." *Id.*

### D. The District Court's Reasoning.

In reaching its decision to detain Mr. Meek, the district court recited, in general terms, the law and the burdens that apply in a presumption case, as well as the factors that the court must review. JA88-90.

Next, the district court stated why Mr. Meek's case was distinguishable from four cases he cited to the magistrate judge, but not the other cases he presented to the district court. JA90-92. The gist of the court's reasoning was that individuals who had sex with or were on their way to have sex with a minor, or created child pornography though physical contact with a minor, were only a threat to that minor. *Id*. As to other cases, the court's reasoning was that the internet had evolved such that more applications were now available to commit crimes. *Id*.

The court then stated the factors that it was considering in deciding Mr. Meek's case. First, the court noted the "egregious nature" or the alleged offense, the "ample evidence" and the "lengthy pattern" alleged by the government. JA92. The court noted that while Mr. Meek is charged with transportation of child pornography, the affidavit also alleges receipt and distribution of child pornography, as well as "a history and pattern of allegedly engaging in and trying to engage in sexual conduct and conversations with minors online." JA93. The court also cited the allegation that Mr. Meek concealed his identity, and had a "broad" interests in the nature of

CSAM he is alleged to have obtained and viewed. *Id*. The court also discussed the harm to minors caused by the consumption and distribution of CSAM. JA94.

The district court alluded to the fact that Mr. Meek "contributed significantly to the public good" but noted that this fact must be "considered in balance, more particularly, with the nature of the offense and the circumstances which the government alleges . . . they are able to prove in the context of this case." JA94-95.

The district court revoked the magistrate's order, and detained Mr. Meek pending trial. In doing so, the court made no finding as to whether Mr. Meek rebutted the presumption of detention. The district court did not address the government's burden to prove by clear and convincing evidence that no conditions could reasonably assure the safety of the community. The district court did not explain why, given the evidence Mr. Meek put forward regarding his conduct since the search of his home, and the lack of evidence that he engaged in any crimes since then, he was nevertheless a safety risk to the community going forward.

## ARGUMENT

### I.  STANDARD OF REVIEW.

In an appeal from a detention order, this Court reviews legal conclusions *de novo* and factual findings for clear error. *See United States v. Goforth*, 546 F.3d 712, 714 (4th Cir. 2008) ("The interpretation of 'judicial' officer' as it is used in § 3145(c) involves a pure question of law which we review de novo."). When a question

involves both law and fact, this Court reviews the factual portion for clear error and the legal question *de novo*. *See Gilbane Bldg. Co. v. Fed. Res. Bank of Richmond*, 80 F.3d 895, 905 (4th Cir. 1996) ("We do not review mixed questions for abuse of discretion. We review them under a hybrid standard, applying to the factual portion of each inquiry the same standard applied to questions of pure fact and examining *de novo* the legal conclusions derived from those facts.").

Whether a given set of facts supports or fits under a legal standard is generally considered a legal question for which this Court applies *de novo* review. *See United States v. King*, 119 F.3d 290 (4th Cir. 1997) (reviewing *de novo* whether vehicle stop was supported by "reasonable suspicion").

## II.     APPLICABLE LAW: THE BAIL REFORM ACT.

The statutory framework for pretrial detention is governed by 18 U.S.C. § 3142. The overarching principle of this section is that a defendant should be ordered released pending trial so long as there is a combination of conditions that will: (1) reasonably assure the appearance of the person; and (2) the safety of the community. 18 U.S.C. § 3142(e)(1).

In this case, there is a rebuttable presumption that no combination of conditions will reasonably assure the appearance of the person or the safety of the community. 18 U.S.C. § 3142(e)(3)(A). The first step in such cases is to determine whether the defendant has met his burden of production to rebut the burden.  The

court must then consider if the government has met its ultimate burden to prove, by a preponderance, that the defendant is a flight risk, and by clear and convincing evidence, that the defendant poses a danger to the community. *See United States v. Wilks*, 15 F.4th 842, 846–47 (7th Cir. 2021) (("[T]he burden of persuasion always rests with the government and an unrebutted presumption is not, by itself, an adequate reason to order detention."); *United States v. Khusanov*, 731 F. App'x 19, 21 (2d Cir. 2018) (quoting *United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011)); *see United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010); *United States v. Moss*, 887 F.2d 333, 338 (1st Cir. 1989); *United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985); *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985).

To rebut the presumption, a defendant simply needs to produce "some evidence that he will not flee or endanger the community if released." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986); *see also United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985), *abrogated on other grounds by United States v. O'Brien*, 895 F.2d 810 (1st Cir. 1990) ("[T]o rebut the presumption, the defendant must produce some evidence."); *United States v. Gamble*, No. 20-3009, 2020 U.S. App. LEXIS 11558 at *1–2 (D.C. Cir. Apr. 10, 2020) (holding that "[t]he district court erred in concluding that appellant failed to meet his burden of production to rebut the statutory presumption" regarding dangerousness because "appellant did

'offer some credible evidence contrary to the statutory presumption,'" including information that he had a job offer) (unpublished) (quoting *Alatishe*, 768 F.2d at 371)).

This "burden of production is not a heavy one to meet." *Dominguez*, 783 F.2d at 707; *see also Wilks*, 15 F.4th at 846–47 (explaining that the defense bears "a light burden of production" to rebut the presumption, "but the burden of persuasion always rests with the government"). Indeed, the presumption of detention is rebutted by "*[a]ny evidence* favorable to a defendant that comes within a category listed in § 3142(g) . . . including evidence of their marital, family and employment status, ties to and role in the community . . . and other types of evidence encompassed in § 3142(g)(3)." *Dominguez*, 783 F.2d at 707 (emphasis added); *Jessup*, 757 F.2d at 384. Any "evidence of economic and social stability" can rebut the presumption. *Dominguez*, 783 F.2d at 707.

Notably, a defendant's ties to the community—standing alone—definitively rebut the presumption: "Where the defendant has presented considerable evidence of his longstanding ties to the locality in which he faces trial, as did [this defendant], the presumption contained in § 3142(e) has been rebutted." *United States v. Jackson*, 845 F.2d 1262, 1266 (5th Cir. 1988). As long as a defendant "come[s] forward with some evidence" pursuant to § 3142(g), the presumption of flight risk and dangerousness is definitively rebutted. *Dominguez*, 783 F.2d at 707 ("Any evidence

17

favorable to a defendant that comes within a category listed in § 3142(g) can affect the operation of one or both of the presumptions. . . . Once this burden of production is met, the presumption is 'rebutted.'" (quoting *Jessup*, 757 F.2d at 384)).

Furthermore, even whether the defendant does not rebut the presumption, the presumption of detention, on its own, is insufficient to justify detention. *Wilks*, 15 F.4th at 847 ("[A]n unrebutted presumption is not, by itself, an adequate reason to order detention."); *Jackson*, 845 F.2d at 1266 (concluding that if the presumption alone could justify detention, "there would be no need for Congress to have specified 'the weight of the evidence against the person' as a separate factor for the court to consider"). The Bail Reform Act requires courts to weigh all the § 3142(g) factors in every case, even when the presumption has not been rebutted. *Wilks*, 15 F.4th at 847.[4]

A "reasonable assurance" of safety to the community and appearance at trial is all that is required—not a guarantee. *See, e.g.*, *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001); *United States v. Blauvelt*, No. Crim. WDQ-08-0269,

---

[4]      S. REP. NO. 98-225, at 23, *as reprinted in* 1984 U.S.C.C.A.N. at 3206 ("Subsection (g) enumerates factors that are to be considered by the judicial officer in determining whether there are conditions of release that will reasonably assure the appearance of the person and the safety of any other person and the community. Since this determination is made *whenever a person is to be released or detained under this chapter, consideration of these factors is required* . . . a court is expected to weigh all the factors in the case before making its decision as to risk of flight and danger to the community." (emphasis added)).

2008 WL 4755840, at *6 (D. Md. Oct. 28, 2008) ("The Bail Reform Act requires a reasonable assurance of the safety of the community, not a guarantee."). In determining whether "any condition or combination of conditions...will reasonably assure the appearance of such person as required and the safety of any other person and the community," judges must consider numerous factors, including

1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

2) the weight of the evidence against the person;

3) the history and characteristics of the person, including—(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and   (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

## III. THE DISTRICT COURT FAILED TO APPLY THE CORRECT LEGAL STANDARD IN REVOKING THE MAGISTRATE'S ORDER OF RELEASE.

The district court's analysis was misguided at the outset by its erroneous view that Mr. Meek was subject to a heavy burden to rebut the presumption of detention.[5] Indeed, the court imposed a "super-presumption" of detention that does not exist in the Bail Reform Act and is contrary to law:

> You've done a good job presenting the best case you can for your client, but as you understand this is a presumption case and the statutes that we look at basically say it's a *super-presumption case*. It can be rebutted, but there is to be *a real strong case to be made to rebut* this kind of situation.

JA70 (emphasis added).  The court focused on the fact that Mr. Meek was alleged to have engaged in "grooming"— which it referred to as alleged direct contact with minors online.  Although defense counsel stressed that the burden of production on the defendant was not in fact heavy the district court disagreed with this argument.

---

[5]     The district court was far from alone in its erroneous view of the presumption standard.  Alison Siegler, *Freedom Denied: How the Culture of Detention Created a Federal Jailing Crisis* 38 (2022), https://freedomdenied.law.uchicago.edu/ (recent study finding that judges "routinely apply the presumption [of detention] incorrectly, giving it more weight than the law allows and failing to assess whether the presumption has been rebutted.").

JA71 ("If that's indeed the case if that analysis was that simple, why did Congress come up with this term, "presumption" and take it a step further and talk about the strong presumption?").  But the Bail Reform Act has no reference to a "strong presumption" of detention.  Defense counsel again argued that the burden of production was a limited one.  JA71-72.

The district court also stated that there "appears to be some tension between the Bail Reform Act and the standard for this kind of case and the presumption of no bond."  JA84.  In fact, there is no such tension—18 U.S.C. § 3142(e)(3) is part of the Bail Reform Act itself.  As detailed above, courts must follow that subsection, in conjunction with the rest of the statute, in determining whether there is any combination of conditions that will assure the safety of the community.  The district court failed to do so here.

The district court's failure to apply the correct standard was legal error, and the detention order must therefore be vacated and remanded.  *D.B. v. Cardall*, 826 F.3d 721, 743 (4th Cir. 2016) ("When a judgment has been predicated on an erroneous legal standard, the proper remedy is usually to remand for a determination under the appropriate standard.") (internal citation marks omitted).

## IV.   THE DISTRICT COURT FAILED TO MAKE THE FINDINGS REQUIRED BY THE BAIL REFORM ACT.

After imposing a "super-presumption" of detention on Mr. Meek, the district court then failed to make the findings required by the Bail Reform Act.

21

First, the district court made no findings regarding whether Mr. Meek rebutted the presumption in favor of detention. While acknowledging throughout the hearing that Mr. Meek presented substantial evidence regarding his ties to the community, his employment, and his character, the district court did not address whether this evidence rebutted the presumption. While this may be explained by the district court's erroneous view that Mr. Meek was subject to a heavy evidentiary burden to overcome a "super-presumption" of detention, the failure to address whether Mr. Meek met the burden to rebut the presumption impacted the § 3142(g) analysis. If the presumption is rebutted—and it easily was by the substantial evidence Mr. Meek presented of his ties to the community and his conduct while subject to the investigation—the court must then weigh the presumption against all of the other evidence about the defendant's history and characteristics that tilts the scale in favor of release. *See Dominguez*, 783 F.2d at 707 ("[T]he rebutted presumption is not erased. Instead it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)."); *Jessup*, 757 F.2d at 384 (holding that the judge should consider the rebutted presumption along with the § 3142(g) factors).

Second, the record is also devoid of any findings as to whether the government carried its burden of persuasion, or whether it was even subject to that burden at all. This is critical because it is the ultimate standard by which the court must determine

whether there are any conditions or combination of conditions would reasonably assure the safety of the community, and this is a burden the government bears at all times. *Dominguez*, 783 U.S. at 707; *Jessup*, 757 F.2d at 384; *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985).

Finally, even independent of the government's burden, there was no individualized finding as to why there could be no set of conditions to reasonably assure the safety of the community. The district court's concern that Mr. Meek could theoretically evade the conditions of release by obtaining an illicit device from some unidentified person reflects an erroneous belief that the Bail Reform Act requires a guarantee of safety to the community, rather than a "reasonable assurance." Further, the Bail Reform Act required the district court to consider and explain why Mr. Meek's conduct while under investigation—*e.g.,* voluntarily remaining in the area, telling the government where he moved, offering to surrender his passport, and relinquishing his firearms with no obligation to do so—did not tilt the scale in favor of release by showing that he would strictly abide by conditions to ensure the safety of the community.

The district court did not analyze any of these facts. Instead, the district court merely "balanced" Mr. Meek's good deeds in the community against the nature of the offense. But the ultimate question for pretrial release is whether some combination of release conditions—any combination—could reasonably assure the

safety of any other person and the community.  The district court did not answer that question.  The district court's approach of relying exclusively on the offense allegations is at odds with § 3142(j), which mandates that "[n]othing in this section shall be construed as modifying or limiting the presumption of innocence."

The district court's failure to make the requisite legal findings and explain its decision requires vacatur and remand.  *See, e.g.*, *United States v. Wooden*, 693 F.3d 440, 451 (4th Cir. 2012) (holding that the Court should reverse if, on its review of the record, is left with "a definite and firm conviction that a mistake has been committed."); *United States v. Gamble*, 810 F. App'x 7, 8 (D.C. Cir. 2020) (vacating detention order and remanding where district court "analyzed the factors set forth in 18 U.S.C. § 3142(g), and concluded that they weighed in favor of detention [but] did not adequately explain in view of the entire record why it found by clear and convincing evidence that appellant would obstruct justice in the future, how he would do so, or why no condition or combination of conditions will reasonably assure the safety of the community.").

## V.    THE DISTRICT COURT DETAINED MR. MEEK ON IMPERMISSIBLE GROUNDS.

In addition to its misapplication of the Bail Reform Act, the district court also based its decision on to detain Mr. Meek solely on a finding of his past dangerousness—a ground that is forbidden by the Bail Reform Act.

Under the Bail Reform Act's danger prong, the relevant question is whether the defendant will pose a danger the community *in the future*. To be sure, the government alleged that Mr. Meek had engaged in criminal conduct for a long time before the search of his home. But a judge is prohibited from detaining a defendant "based on evidence that he has been a danger in the past[.]" *Dominguez*, 783 F.2d at 707. The Bail Reform Act requires courts to engage in a forward-looking analysis when determining whether the defendant is a danger to the community. 18 U.S.C. § 3142(g)(4) (referring to danger "that would be posed by the person's release."). In other words, "the Court should consider whether the defendant poses a threat of committing violence *in the future* and make a *forward-looking* determination in its dangerousness assessment." *United States v. Taylor*, No. 1:21-CR-392-RCL-2, 2021 WL 3552166, at *8 (D.D.C. Aug. 11, 2021) (internal citations, brackets, and quotation marks omitted) (emphasis added).

On that score, the government did not allege that Mr. Meek engaged in any criminal conduct after the FBI search of his home in April 2022. The government did not arrest him until February 2023. Thus—for over eight months—Mr. Meek was living in the community without any oversight by the court or a pretrial services officer, without any internet restrictions or monitoring, and without any third-party custodian. Yet he committed no crime. Apparently, the government either didn't have enough proof to charge him or (perhaps more likely), the government made the

measured determination that Mr. Meek did not present the sort of imminent threat to public safety that required immediate arrest. One hopes that if the government had evidence of Mr. Meek's guilt and truly believed that he presented an unmitigable risk of danger to the community, the FBI and United States Attorney's Office would not have taken eight months to bring a charge. But they did wait. And during that period there is absolutely no evidence that Mr. Meek engaged in any wrongdoing. That alone is strong evidence that Mr. Meek—if released on strict conditions with close court supervision—would not pose a danger to any other person or the community going forward.

Past dangerous conduct is relevant only to the extent that the government can prove—by clear and convincing evidence—that the defendant is "likely to continue to engage in criminal conduct undeterred [ ] by . . . release conditions." *Dominguez*, 783 F.2d at 707; *See also United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985) (weight of the evidence and nature of the offense "may be considered only in terms of the likelihood that the person will fail to appear or will pose a danger to any person or to the community."). Here, while the district court mentioned in passing that it must look to the danger that would be posed by the defendant's release, JA90, the district court's reasoning focused exclusively on the past: the alleged facts of the offense, the harm to minors from the alleged offense, and the weight of the evidence.

The lack of any finding as to future dangerousness is legal error, and requires a vacatur and remand to the district court.[6]

## CONCLUSION

For all of the foregoing reasons, this Court should vacate the district court's order of detention, and remand for a hearing in accordance with the Bail Reform Act.

Respectfully submitted,

/s/ Eugene V. Gorokhov
Eugene V. Gorokhov
Burnham & Gorokhov PLLC
1424 K Street, NW, Suite 500
Washington, DC 20005
(202) 386-6920

*Counsel for Appellant*

---

[6] Even assuming *arguendo* that the district court's discussion of the allegations somehow implied a finding of future dangerousness, the district court's failure to consider the substantial evidence that Mr. Meek presented to show that he would comply with the conditions of release is legal error. *See, e.g.*, *Miller v. Mercy Hosp., Inc.*, 720 F.2d 356, 361 (4th Cir. 1983) (holding that the district court commits error when it makes factual findings "without properly taking into account substantial evidence to the contrary.").

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[ X ] this brief contains [*6,589*] words.

[    ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2.      This brief complies with the typeface and type style requirements because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated:  February 21, 2023                        /s/ Eugene V. Gorokhov
                                                                  *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 21st day of February, 2023, I caused this

Memorandum Brief of Appellant and Appendix to be filed electronically with the

Clerk of the Court using the CM/ECF System, which will send notice of such filing

to the following registered CM/ECF users:

Jacqueline R. Bechara
Alexandra Z. Bedell
OFFICE OF THE U.S. ATTORNEY
2100 Jameson Avenue
Alexandria, Virginia 22314
(73) 299-3819

*Counsel for Appellee*

/s/ Eugene V. Gorokhov
*Counsel for Appellant*