IN THE UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Appellee*, | ) | |
| | ) | |
| v. | ) | No. 23-4082 |
| | ) | |
| JAMES GORDON MEEK, | ) | |
| | ) | |
| *Defendant-Appellant*. | ) | |
| | ) | |

## **GOVERNMENT'S MEMORANDUM RESPONSE BRIEF**

The defendant, James Gordon Meek, is charged with transportation of child pornography, an offense triggering a rebuttable presumption of detention pending trial. He has trafficked in child sexual abuse material and has communicated with and attempted to entice multiple minors online for at least a decade. The district court's decision to detain him correctly reflects that the defendant poses a clear danger to the community—and to minors in particular. Moreover, the district court applied the correct legal standards and made all required findings in reaching its decision. The district court's decision should be affirmed.

## FACTUAL BACKGROUND[1]

### A.　Evidence of Transportation of Child Pornography

Based on a CyberTip reporting that the defendant had uploaded five videos of child pornography to a Dropbox account and other investigative information, law enforcement obtained a search warrant for the defendant's home. Several electronic devices were collected from the residence and subsequently searched.

At least one device contained evidence that the defendant was engaging in sexually explicit conversations where the participants expressed enthusiasm for the sexual abuse of children. In two of those conversations, the defendant received and distributed child pornography image and video files through Kik, an internet-based messaging platform.

Forensic review of the same device showed that between February 26, 2020 and February 27, 2020, the defendant and USERNAME 2 exchanged child pornography and messaged on Kik about their mutual interest in the sexual exploitation of children. USERNAME 2 identified as a 25-year-old male, and when the defendant asked, "Love kids?," USERNAME 2 responded, "Yesss" and "mmmm im glad I found someone likeminded." The defendant and USERNAME 2

---

[1] All facts are derived from the affidavit in support of the complaint, unless otherwise noted. *See* JA22.

exchanged pictures of their penises and continued their conversation (spellings as in original):

> USERNAME 2: Youre so sexy. I want your cock while those kids suck me
> USERNAME 2: Its so beautiful
> USERNAME 2: I love your cock
> Meek: Have you ever raped a toddler girl? It's amazing
> USERNAME 2: itsmy dream
> Meek: Do you have any pictures of bitches?
> USERNAME 2: I want you with me fucking her together while we kiss and use her
> USERNAME 2: I have a vid
> Meek: I would give anything to do that
> Meek: Show it
> USERNAME 2: Sadly not as young as id like
> Meek: Send me a video so I can see you stroking that gorgeous cock

JA24–25. USERNAME 2 then sent the defendant a video focused on the genital area of an apparent minor female depicting a female using her fingers to masturbate her vagina. The female appeared to be between a pre-adolescent and adolescent, and there was no visible hair on her pubic region. The female stated several times during the video, "Daddy fuck me."

Shortly thereafter, USERNAME 2 told the defendant "Id give anything to rape toddlers with you." JA25. The defendant responded, "I think I'm in love with you," and sent a video that was 1 minute and 14 seconds in length depicting an erect penis penetrating the anus of a female infant. JA25. Throughout the duration of the video, the infant can be heard loudly crying and screaming. The man continues to rape the

infant despite her screams and becomes more forcible in the penetration of her anus as the video progresses. Shortly after sending this video, the defendant said, "I wish I could lick up all that cum all over that little baby that he just raped." JA25. The defendant sent USERNAME 2 at least one more image and one more video depicting child pornography.

Between February 26, 2020 and February 28, 2020, the defendant and USERNAME 3 exchanged child pornography files and messaged on Kik about the sexual exploitation of children. USERNAME 3 identified himself as a 22-year-old male, and when the defendant asked, "Love kids?," USERNAME 3 responded, "I do." JA25. The defendant sent an image of a prepubescent girl on the beach with her chest exposed, and then stated, "Rape this little bitches mouth with that gigantic cock." JA25. On February 26, 2020, the defendant sent to USERNAME 3 the same video depicting the anal rape of an infant discussed above. The defendant sent USERNAME 3 via Kik approximately four additional images depicting child pornography, including an image depicting a prepubescent girl with apparent semen on her stomach immediately above her exposed genitalia.

Travel records and evidence from the device demonstrate that on February 28, 2020, the defendant traveled on a flight from Charlotte, North Carolina, to Ronald Reagan Washington National Airport, within the Eastern District of Virginia, with the device containing the chats and child pornography described above.

## B.  Other Evidence of Distribution of Child Pornography

Law enforcement also seized a 2TB Silicon Power external hard drive from the defendant's kitchen table during the execution of the search warrant. The external hard drive contained an image that depicted a screenshot of the messaging application Telegram on an Apple device that appeared to have been saved down to the hard drive from an iCloud backup. The top chat thread was titled "Cocks, Cunts, and Kids." The group's profile picture depicted a child eating a popsicle.

The most recent message on the group chat was sent from the user of the messaging application on the device where the screenshot was taken—in other words, the defendant. The message contained at least one video. The frozen frame of that video depicted a young girl performing or about to perform oral sex on a man's visible erect penis. A circle with a triangle in the center of the image indicated that it was a video. This message was sent on April 5, 2020.

The external hard drive also contained an image depicting a screen shot of an iPhone with the open applications/windows shown as tiles. The open windows include a window depicting the internet-based chat application Telegram. The Telegram tile shows a chat log containing several images on the right side of the chat, indicating they were sent from the user of that account—the defendant.  The images appear to be videos, as they include time stamps in the upper left corner.  The sent images are consistent with child pornography.  Also visible is a still image of a

video that appears to be 1:30 in length. This video is part of a series of child pornography images and videos known to law enforcement and contained in a National Center for Missing & Exploited Children database of identified children. This image shows a created date of January 12, 2022, but law enforcement believes this is the date that the image was either saved to the hard drive or to the iCloud backup, not the date the photo was taken.

### C. Evidence of Meek Engaging with Minors and Suspected Minors Online

The Snapchat account with the username "hoolijax" appeared on several of the defendant's devices. A review of the Snapchat conversations stored on the defendant's devices revealed a Snapchat conversation from February 29, 2020, to March 2, 2020, between "hoolijax" and IDENTIFIED MINOR 2. IDENTIFIED MINOR 2 was a minor in 2020.

The stored communications did not appear to be the entirety of the Snapchat conversation, and the conversation only contained text messages. The communication started with hoolijax asking, "Who do you love most in the world?" IDENTIFIED MINOR 2 responded with the name of a public figure ("public figure 1"). Hoolijax went on to say, "She's worthy of that big love. You are a beautiful girl and she should feel blessed that you love her more than anyone." JA31. Later in the conversation, hoolijax stated, "I know someone who knows her really well. I thought

6

I could help you.  I won't ask you anymore questions." JA31. IDENTIFIED MINOR 2 then responded, "What" and "What did she say."  Hoolijax went on to say, "She talked to my friend about you," "She doesn't hate you," and "I'll find out more tomorrow from him."  The defendant's devices also contained approximately a dozen nude images of IDENTIFIED MINOR 2, including images depicting her breasts and pubic region.

Law enforcement interviewed IDENTIFIED MINOR 2, who stated that the defendant had approached her through Snapchat and had pressured her to provide pictures depicting sexually explicit conduct.

Review of the electronic devices seized during the search warrant has also revealed significant evidence that the defendant has engaged directly, and attempted to engage, with minors online on platforms and applications other than Snapchat.

Law enforcement located images of the defendant video chatting with self-identified minors on Omegle on the external hard drive. Omegle is a communication platform in which a user can be randomly matched with another user for an anonymous text communication, video communication, or both. For example, an image with a creation date of December 20, 2016, depicts the screen of another device. Visible on that screen is an Omegle video chat. The other person in the chat identified themselves as 14 years old in the text portion of the chat and provided their Kik username.  The defendant's portion of the video chat was also visible in

the image. The defendant's nude abdomen, legs, and penis were visible, and the defendant can be seen holding his penis with his left hand.

Law enforcement also located on the external hard drive several images depicting screen shots of Instagram conversations. Based on the language and the text of the conversations, as well as the display picture showing what appeared to be a minor female, it appears that MEEK was using an account in which he posed as a minor female to communicate with other minors on Instagram and solicit pictures.

### D. Evidence of Possession of Child Pornography

A review of the images and videos from a laptop seized from the defendant's residence revealed approximately 90 images and videos of child pornography. For example, one video compiles multiple clips, including a scene where an adult female places her tongue on a naked toddler's vagina and a scene where an adult male inserts his penis into a toddler's vagina.

A review of the external hard drive revealed approximately 58 images and videos of child pornography. For example, one image depicted a nude prepubescent boy with a strap around his face with a device forcing his mouth open; his hands are bound to his feet. The boy is wearing a "Santa Claus" style hat with a bow pictured around his waist above his penis. Another image, saved to the hard drive in November 2014, depicted IDENTIFIED MINOR 1's genitals.

## PROCEDURAL HISTORY

On January 31, 2023, the defendant was charged by criminal complaint and arrested for transportation of child pornography, in violation of 18 U.S.C. § 2252(a)(1). He made his initial appearance before the Honorable Judge Lindsey R. Vaala on February 1, 2023, at which time the court conducted preliminary and detention hearings. During the hearing, the government admitted the complaint affidavit into evidence, and the testifying agent adopted its contents as her testimony. Acknowledging it was a "close call," the court ordered the defendant released pending trial under conditions. JA3. The government notified the court of its intent to seek district court review pursuant to 18 U.S.C. § 3145(a)(1).

On February 6, 2023, the parties appeared before the Honorable Rossie D. Alston, Jr., on the government's motion to revoke the release order. During this hearing, the government admitted the complaint affidavit into evidence, and the government, the defendant, and the district court questioned the case agent. The parties then made their arguments, with the court carefully questioning both parties on various aspects of their arguments.

## DISTRICT COURT'S DECISION AND ORDER

After arguments and questioning had concluded, the district court orally announced its decision to detain the defendant and provided the facts and bases supporting that decision. The district court began by stating "the applicable law and

the analytical perspective that the Court is going to provide to justify the conclusion that's reached here." JA88. The court noted that review of a magistrate's decision is *de novo*. JA88-89. The court stated that to order a person detained pending trial, "a Court must find 'no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" JA89 (quoting 18 U.S.C. § 3142(e)(1)).

The court next observed that if there is probable cause to find that the defendant committed an offense involving a minor, "a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the safety of other persons and the community." JA89. "In such a case," the court explained, "a defendant bears the burden of production to come forward with evidence to suggest that the presumption is unwarranted in his or her particular case. If the defendant successfully rebuts the presumption, the burden returns to the government." JA89. However, the court noted that "[e]ven if the defendant bears his burden, the presumption remains a fact in deciding whether to detain a defendant because it reflects Congress's substantive judgment that particular classes of offenders should be detained prior to trial." JA89-90. The court proceeded to note that "[i]f the burden returns to the government, they bear different burdens with respect to the dangerousness and risk of flight. The government must prove by clear and

10

convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other persons and the defendant." JA90.

The court then reviewed the different factors that it must consider under Section 3142(g), including the nature and circumstances of the offense; the weight of the evidence; the "history and characteristics of the person, including the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and records concerning appearances at court proceedings." JA90.

The court also reviewed four of the cases the defendant had cited as examples where defendants had been released even when facing allegations of offenses involving minors, distinguishing them from the defendant's relevant characteristics in the present case. *See* JA90-92. For example, the court noted that this case involved "multiple victims spread out across the United States and potentially beyond"; that the defendant used multiple platforms to contact minors, demonstrating an enhanced "level of sophistication"; and that the defendant had directly communicated with minors, including "impersonat[ing] teenage girls and engaging in grooming activity." JA90-91.

The court then announced the factors it considered in deciding this particular case. JA92. The court again noted its authority to revoke the release order and the

"rebuttable presumption of detention that exists." JA92. Nonetheless, the court concluded that the "egregious nature of the alleged offense, the ample evidence in this case at this point, the defendant's lengthy pattern of engaging in conduct and the danger he poses to the community weigh strongly in favor of detention." JA92. The court reviewed the nature and circumstances of the offense at length, noting that the defendant's conduct involved transportation, distribution, and receipt of child pornography; that the defendant was a member of at least one community dedicated to the exchange of child sexual abuse material; that the defendant had a "history and pattern of allegedly engaging in and trying to engage in sexual conduct and conversation with minors online," including efforts to manipulate at least one identified minor; and the defendant had made efforts to conceal his behavior, including posing as an adolescent girl to chat with minors. *See* JA92-93. The court also considered that the defendant's interests were broad, ranging from infants, to prepubescents, to late adolescents, and that the government had alleged that the conduct spanned multiple platforms and years. JA93.

The court then recognized that "the harm to the child is exacerbated by the circulation" of images of a child's sexual abuse and that victims "suffer direct and primary emotional harm when another person possesses, receives or distributes the material." JA94. Next, the court reviewed the weight of the evidence it had discussed above, which it described as "compelling." JA94.

12

The court acknowledged that this case was "difficult" because of the defendant's significant contribution to the public good. JA94. The court noted that the defendant "has done a lot of great things, allowing families to get closure on, things that were very important to them in their lives." JA94. But the court reasoned that these factors had to be "considered in balance, more particularly, with the nature of the offense and the circumstances which the government alleges . . . they are able to prove in the context of this case." JA95. The court thus concluded that it would order that the defendant be detained pending trial.

Also on February 6, the court published a written order. The court noted that it had considered the government's motion, the defendant's opposition, the record before the magistrate court, and the evidence and arguments presented at the February 6 hearing. "[F]or the reasons stated on the record at the February 6, 2023, hearing," the court granted the government's motion ordered the defendant be detained pending trial. JA98.

On February 10, 2023, the defendant filed notice of his interlocutory appeal.

## STANDARD OF REVIEW

This Court reviews *de novo* whether the district court applied the correct legal standard. *United States v. Goforth*, 546 F.3d 712, 714 (4th Cir. 2008). However, this Court reviews the conclusion reached in the district court's pretrial detention order for clear error. *See United States v. Clark*, 865 F.2d 1433, 1437 (4th Cir. 1989) (en

banc) ("Although the district court review of a magistrate's detention order is *de novo*, our review of the final detention order of the district court is under a clearly erroneous standard."). The clear error standard of review "applies not only to the court's specific predicate factual findings but also to its overall assessment, based on those predicate facts, as to the risk of flight or danger presented by defendant's release." *United States v. Abuhamra*, 389 F.3d 309, 317 (2d Cir. 2004); *see also Clark*, 865 F.2d at 1437. A finding is clearly erroneous only when the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985).

## ARGUMENT

The district court applied the correct legal standard, made all required findings, and based its detention decision on permissible factors. In light of the great risk the defendant poses to the community, the district court did not err, clearly or otherwise, in ordering the defendant detained pending trial. The district court's order should be affirmed.

## I. The district court applied the correct legal standard.

The Bail Reform Act, Title 18, United States Code, Section 3141, *et. seq.*, permits a district court to detain a defendant pending trial if it determines he poses either a risk of flight or a danger to the community. That statute provides that if "the judicial officer finds that no condition or combination of conditions will reasonably

14

assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1).

"Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed . . . an offense involving a minor victim under section…2252(a)(1)." 18 U.S.C. §3142(e)(3)(E). Such a presumption exists in the instant case because the defendant has been charged by criminal complaint with transportation of child pornography, in violation of 18 U.S.C. 2252(a)(1). Further, a violation of § 2252(a)(1) falls under Chapter 110 of Title 18, and hence, for purposes of the Bail Reform Act, the offense is a crime of violence. *See* 18 U.S.C. § 3156(a)(4)(C) ("the term 'crime of violence' means—… any felony under chapter … 110"). If a defendant is facing detention for a crime of violence and the government moves for detention, as the government did here, then a district court must determine whether there are conditions that "will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f).

In making the determination as to whether pretrial detention is appropriate, the court must consider four factors: (1) the nature and circumstances of the crimes

charged; (2) the weight of the evidence; (3) the history and characteristics of the defendant; and (4) the seriousness of the danger posed by the defendant's release. *See* 18 U.S.C. § 3142(g). Even if the defendant rebuts the presumption, "[t]he presumption remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). The court must find by a preponderance of the evidence that no combination of conditions will reasonably assure the defendant's appearance at future court proceedings, or by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community. 18 U.S.C. § 3142(f)(2). For pretrial detention, the lack of reasonable assurance of either the defendant's appearance or the safety of others or the community is sufficient; both are not required. *See United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (per curiam).

The government and the defendant do not dispute the relevant legal standards. Moreover, this is precisely the set of standards that the district court articulated and applied in this case. The district court provided a lengthy and detailed announcement of the "applicable law and the analytical perspective the Court is going to provide to justify the conclusion that's reached here." JA89. The court began by stating the

correct standard of review and noting that § 3142(e)(3)(E)'s rebuttable presumption applied. JA89. Regarding that presumption, the court declared that "a defendant bears the burden of production to come forward with evidence to suggest that the presumption is unwarranted in his or her particular case," and that if "the defendant successfully rebuts the presumption, the burden returns to the government." JA89 (citing *United States v. Boyd*, 484 F.Supp.2d 486 (E.D. Va. 2007)). The court then correctly stated that the "government must prove by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other persons and the defendant," and proceeded to enumerate the factors to be considered under § 3142(g). JA89-90.

The defendant does not challenge the standards the district court described in announcing its opinion. Instead, the defendant relies on language from the district court's colloquy with counsel to claim that the court applied a "super-presumption" of detention. Specifically, after hearing argument from the government, the district court turned to defense counsel and commented, "[A]s you understand this is a presumption case and the statutes that we look at basically say it's a super-presumption case." JA70. The court then recognized that the presumption "can be rebutted, but there is to be a real strong case to be made to rebut this kind of situation." JA70. The court's comments are consistent with the Supreme Court's observation that the Bail Reform Act "operates only on individuals who have been

arrested for a specific category of extremely serious offenses." *United States v. Salerno*, 481 U.S. 739, 750 (1987) (citing 18 U.S.C. § 3142(f)). "Congress specifically found that these individuals are far more likely to be responsible for dangerous acts in the community after arrest." *Id.* (citing S. Rep. No. 98-225, at 6–7 (1983)).

In any event, this exchange did not constitute the district court's statement of the applicable law. In fact, after the district court suggested a super-presumption, defense counsel explained that, in fact, the defendant's burden of production is "a very low burden, a limited burden." JA71. Defense counsel then recited the same legal standard discussed above—that if the defendant meets his burden, then "the presumption then shifts back to the government." JA71. Defense counsel was apparently persuasive, because when the district court recited the law it applied to its decision, it made no mention of a super-presumption, or even a strong presumption. *Cf.* JA88–90. Notably, in claiming that the district court applied the wrong standard, the defendant cites *nothing* from the district court's announcement of its decision. *See* Br. 20-21.

The defendant seeks to impose an impossible standard. Under his proposed approach, any stray comment or question during a hearing—regardless of whether it was countered on the spot, and stated correctly in the ultimate decision—could doom a court's decision. This approach makes no sense and is not the law. Because the

district court correctly stated and applied the law in announcing its ruling, its decision should be affirmed.

## II. The district court made all required findings to support the detention order.

The district court's announcement of its decision also contained lengthy findings of facts and an individualized explanation for its ultimate decision to order the defendant detained. To begin, the court reviewed several cases cited by the defendant as examples justifying release, distinguished those cases, and made findings about the defendant's behavior and conduct that directly reflected on the likelihood that conditions of release would reasonably assure the safety of the community. For example, the court noted that in one cited case, the primary consideration was the safety of the single victim, and the defendant had been already barred from contacting that minor. JA90-91. The court noted that in the present case, however, there were "multiple victims spread out across the United States and potentially beyond." JA91. The court also found that, unlike in the cited cases, the defendant had used numerous platforms to contact victims (including platforms that are designed to conceal identities and delete messages), demonstrating "a level of sophistication" beyond what was seen in one of the other cited cases. JA91. The court also noted that, again unlike in the other cases, the defendant had communicated directly with minors, had concealed his identity, and had "apparently

19

impersonated teenage girls and [was] engaging in grooming activity." JA90-92. All of these factors made the defendant a great danger to the community—and harder to monitor and supervise—than the other defendants who had been released pending trial.

The court then carefully reviewed the nature and circumstances of the offense, including the seriousness of the defendant's conduct. The court noted that while the defendant was charged with one count of transportation of child pornography, the "offense conduct is much more extensive," including evidence of the defendant's distribution and receipt of child pornography. JA92. The court found that the defendant had sought this material out online and was "at least a member of one community dedicated to the exchange" of child pornography, including actively contributing to the group. JA92. "Even more concerningly," the court found, "the defendant had a history and pattern of allegedly engaging in and trying to engage in sexual conduct and conversation with minors online," manipulating at least one minor, and concealing his identity. JA92-93. These factors all highlight the danger the defendant poses to the community and the difficulty in supervising his conduct.

The court then moved on to discuss the harm to the victims and the community. Quoting *United States v. Burgess*, 684 F.3d 445, 459 (4th Cir. 2012), the court noted that "the harm to the child is exacerbated by the circulation" of images of the child's sexual abuse, and that victims "suffer direct and primary

emotional harm when another person possesses, receives or distributes the material."
JA94. The judge also found that the weight of the evidence was "compelling." JA94.

Nor did the district court neglect its consideration of the defendant's personal characteristics. The court noted that the defendant had "contributed significantly to the public good" and had "done a lot of great things," referencing the defendant's work with families of hostages and military servicemembers. JA94. Nonetheless, the court accurately concluded that this information had to be considered "in balance, more particularly, with the nature of the offense and the circumstances which the government alleges . . . they are able to prove." JA95.

The court concluded by ordering that the defendant be detained. JA95. Shortly thereafter, the court satisfied Section 3142(i)'s requirement for a written order when it published an order incorporating the reasons stated on the record at the hearing and reflecting its consideration of the briefing, record from the magistrate court, and evidence and argument from the hearing. JA98.

The defendant objects that the district court's lengthy findings were insufficient. But the defendant cites no statute or case law requiring the specific findings that the defendant now demands. Section 3142(i) requires that a detention order include findings of fact and a statement of reasons justifying the decision. But it does *not* require specific findings relating to the presumption of detention or the

government's subsequent burden of persuasion. Nor has the defendant cited any case law—and the government has found none—requiring such findings.

Moreover, while the court must *consider* all of the factors listed in § 3142(g), nothing in the statute or case law requires *findings* as to every single factor considered, much less every single fact or argument offered into evidence. The court provided a lengthy discussion of the facts and its reasons for detaining the defendant, and the defendant does not suggest otherwise. That he wishes the district court's decision had addressed *additional* arguments—when the decision contains all the required elements—is not a basis for vacating the court's ruling.

Moreover, even though it was clear that the court was announcing its decision from the bench, the defendant did not raise any objection at the hearing to the district court's findings—when the court would have had the opportunity to address any issues. Review of any purported error is thus for plain error. *See, e.g.*, *United States v. Hargrove*, 625 F.3d 170, 184 (4th Cir. 2010) (reviewing claim only for plain error where the defendant "failed to object to [the asserted error] at the time, thus denying the district court the opportunity to consider [his] argument and correct the purported error"); *United States v. Elbaz*, 52 F.4th 593, 611 (4th Cir. 2022) ("[O]bjections must be made with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." (internal quotation marks omitted)). Given that neither the statute nor the case law require specific findings regarding the

22

presumption or on every factor listed in § 3142(g), it was certainly not plain error for the court to not make those findings.

Finally, even if this Court determines that the district court's findings were insufficient, any error is harmless. *See United States v. Montalvo-Murillo*, 495 U.S. 711, 722 (1990) (applying harmless error review to Bail Reform Act analysis). As the defendant himself notes, the Bail Reform Act "requires courts to weigh all Section 3142(g) factors in every case, even when the presumption has not been rebutted." Def. Br. 18 (citing *United States v. Wilks*, 15 F.4th 842, 847 (4th Cir. 2021)). Likewise, a presumption of detention alone is not sufficient to justify detention, Def. Br. 18 (citing *Wilks*, 15 F.4th at 847), and even if the presumption is rebutted, it still "remains as a factor to be considered among those weighed by the district court." *Stone*, 608 F.3d at 945. In other words, regardless of whether the district court expressly stated that the presumption was rebutted, the district court would be required to consider the presumption and the various Section 3142(g) factors—which it did. The Bail Reform Act's requirements must "be applied with common sense." *United States v. Clark*, 856 F.2d 1433, 1437-38 (4th Cir. 1989). Even if the district court had erred by not making specific findings now demanded by the defendant—and it did not—the decision should nonetheless be affirmed.

23

**III.  The district court did not clearly err in finding that the defendant poses a danger to the community.**

The defendant's only argument that the district court clearly erred in its decision is that it improperly based its decision on a finding of the defendant's past dangerousness. The defendant's argument is nonsensical. The defendant argues that a court's finding cannot be "based on evidence that [the defendant] has been a danger in the past," Def. Br. 25, but he omits the most obvious—and critical—part: "*except to the extent that his past conduct suggests the likelihood of future misconduct.*" *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (emphasis added). Short of admitting a crystal ball into evidence, the only way to know if a defendant poses a future danger is to consider his past behavior.

Here, the district court found that the defendant's behavior was "broad" (reflecting interests in "trading images depicting everything from the rape of infants to the bondage [and] S&M treatment of prepubescent boys, to the sexual exploitation of late adolescents"), longstanding (spanning multiple years), and evincing a "level of sophistication" (due to the multiple platforms the defendant used). JA91-92. He also noted that the defendant used Snapchat and Omegle, platforms designed to conceal identities and content, and had pretended to be an adolescent girl to talk to other minors. JA91, 93. All of these factors—along with the others considered and

relied upon by the district court, clearly indicate that the defendant's wide-ranging and long-running behavior is likely to continue into the future.

The defendant accurately notes that the government has not alleged that the defendant committed any crime in the period between the search of his residence and his arrest. Def. Br. 25. But this is not the same as saying that the defendant committed no crime during that period. As the government explained during the hearing, it has no insight into what the defendant was doing during this period, and its investigation is ongoing. JA86-87. Nor does the fact that time elapsed before the defendant's arrest indicate that he was not a danger to the community. The government cannot charge and arrest an individual until it has developed sufficient evidence to prove beyond a reasonable doubt that a crime was committed. As the government explained, this investigation required review of voluminous material from numerous seized devices, several of which were password protected. Moreover, in light of the strict enforcement of the Speedy Trial Act deadlines in the Eastern District of Virginia, the government's investigation must be nearly complete before it can charge. *See* JA87. None of these investigative and prosecutorial realities mean that the defendant is not a danger to the community.

As the Supreme Court has explained, the Bail Reform Act sets forth "procedures by which a judicial officer evaluates the likelihood of future dangerousness [that] are specifically designed to further the accuracy of that

25

determination." *Salerno*, 481 U.S. at 751. In making that assessment, "[t]he judicial officer charged with the responsibility of determining the appropriateness of detention is guided by [the] statutorily enumerated factors" in § 3142(g). *Id.* The district court appropriately considered the factors enumerated in § 3142(g) and properly ordered the defendant detained based on the factual record. And under the clear-error standard, "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *United States v. Thorson*, 633 F.3d 312, 317 (4th Cir. 2011) (quoting *Anderson*, 470 U.S. at 573–74).

The defendant has engaged in extensive criminal behavior across platforms, devices, and years. His conduct includes not only trafficking of child pornography, but also directly engaging in sexual conduct and conversations with minors, grooming and manipulating them. For years, he kept this criminal behavior hidden from everyone around him. His conduct poses a clear danger to society, and his release would present a serious danger to all of these vulnerable, minor victims. Therefore, the district court did not clearly err when it determined that no condition of or combination of conditions could reasonably assure the safety of the community and the defendant. The decision should be affirmed.

## CONCLUSION

For all of the reasons stated above, the United States requests that this Court affirm the district court's order of detention. In the alternative, should this court conclude the district court erred in its application of the requirements of the Bail Reform Act, the government requests that the Court not vacate the district court's order, but instead order a limited remand for the purpose of allowing the district court to either correct any error or order the defendant released pending trial subject to appropriate conditions. *See, e.g., United States v. Nwokoro*, 651 F.3d 108, 111-12 (D.C. Cir. 2011).

Respectfully submitted,

Jessica D. Aber
United States Attorney

_____ /s/
Zoe Bedell
Assistant United States Attorney
2100 Jamieson Ave.
Alexandria, VA 22314
703-299-3700

## CERTIFICATE OF COMPLIANCE

I certify that this brief was written using 14-point Times New Roman typeface, a proportionally spaced font, and Microsoft Word 365.

I further certify that this brief does not exceed 13,000 words (and is specifically 6162 words) as counted by Microsoft Word, excluding the case caption, this certificate, and the certificate of service.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.

_____
/s/

Zoe Bedell
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I certify that on February 24, 2023, I filed electronically the foregoing brief with the Clerk of the Court using the CM/ECF system, which will send notice of the filing to all counsel of record.

By: _____/s/_____
     Zoe Bedell
     Assistant United States Attorney
     Eastern District of Virginia
     2100 Jamieson Avenue
     Alexandria, Virginia 22314
     (703) 299-3700
     Zoe.Bedell@usdoj.gov