**23-4082**

# United States Court of Appeals

## *for the*

# Fourth Circuit

UNITED STATES OF AMERICA,

*Plaintiff–Appellee,*

– v. –

JAMES GORDON MEEK,

*Defendant–Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA

## MEMORANDUM REPLY BRIEF OF APPELLANT

EUGENE V. GOROKHOV
BURNHAM & GOROKHOV PLLC
1424 K Street, NW, Suite 500
Washington, DC 20005
(202) 386-6920

*Counsel for Appellant*

CP  COUNSEL PRESS ● VA – (804) 648-3664

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... ii

ARGUMENT .............................................................................................1

    I.     THE DISTRICT COURT ERRONEOUSLY APPLIED A "SUPER-PRESUMPTION" OF DETENTION THAT COULD ONLY BE REBUTTED WITH "STRONG" EVIDENCE...................1

    II.    THE DISTRICT COURT FAILED TO MAKE THE REQUIRED FACTUAL AND LEGAL FINDINGS...........................3

          A.    The district court failed to consider and synthesize all of the evidence pertinent to § 3142(g) ............................................3

          B.    Mr. Meek did not "waive" the district court's misapplication of the Bail Reform Act .......................................9

          C.    The error was not harmless .......................................................11

    III.    THE DISTRICT COURT FAILED MAKE THE NECESSARY FINDING THAT MR. MEEK WOULD BE A DANGER TO THE COMMUNITY IF RELEASED .................................................13

CONCLUSION .........................................................................................16

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

## CASES

*Doe v. Menefee*,
    391 F.3d 147 (2d Cir. 2004) ........................................................... 5

*Miller v. Mercy Hosp., Inc.*,
    720 F.2d 356 (4th Cir. 1983) ......................................................... 3

*Taylor v. Maddox*,
    366 F.3d 992 (9th Cir. 2004) ......................................................... 7

*United States v. Affleck*,
    765 F.2d 944 (10th Cir. 1985) ....................................................... 8

*United States v. Arbaugh*,
    951 F.3d 167 (4th Cir. 2020) ......................................................... 7

*United States v. Bartlett*,
    567 F.3d 901 (7th Cir. 2009) ....................................................... 11

*United States v. Chatmon*,
    718 F.3d 369 (4th Cir. 2013) .................................................. 4, 5, 7

*United States v. Clark*,
    865 F.2d 1433 (4th Cir. 1989) ................................................. 8, 13

*United States v. Dominguez*,
    783 F.2d 702 (7th Cir. 1986) ................................................. 13, 14

*United States v. Elbaz*,
    52 F.4th 593 (4th Cir. 2022) .................................................. 9, 10

*United States v. Gamble*,
    810 F. App'x 7 (D.C. Cir. 2020) ................................................... 6

*United States v. Hargrove*,
    625 F.3d 170 (4th Cir. 2010) ......................................................... 9

*United States v. Lynn*,
    592 F.3d 572 (4th Cir. 2010) ...................................................................10, 11

*United States v. Montalvo-Murillo*,
    495 U.S. 711 (1990)...................................................................................11

*United States v. Ross*,
    912 F.3d 740 (4th Cir. 2019) .......................................................................12

*United States v. Salerno*,
    481 U.S. 739 (1987)...............................................................................15, 16

*United States v. Singh*,
    860 F. App'x 283 (4th Cir. 2021) .................................................................2

*United States v. Stone*,
    608 F.3d 939 (6th Cir. 2010) ....................................................................6, 12

*United States v. Turner*,
    365 F. App'x 918 (10th Cir. 2010) ................................................................9

*United States v. Wooden*,
    693 F.3d 440 (4th Cir. 2012) ....................................................................5, 7

**STATUTES**

18 U.S.C. § 3142 ........................................................................................4

18 U.S.C.§ 3142(g) ............................................................................3, 6, 12, 16

18 U.S.C.§ 3142(i) .....................................................................................8, 9

18 U.S.C. § 3553 ........................................................................................4

18 U.S.C. § 3553(c) ....................................................................................12

Defendant-Appellant James Meek respectfully submits this reply to the government's brief regarding pretrial detention.   ECF 8 ("Gov't Br.").

## ARGUMENT

### I.    THE DISTRICT COURT ERRONEOUSLY APPLIED A "SUPER-PRESUMPTION" OF DETENTION THAT COULD ONLY BE REBUTTED WITH "STRONG" EVIDENCE.

After repeating the facts from its Complaint Affidavit,[1] the government argues that "the district court correctly stated and applied the law in announcing its ruling." Gov't Br. at 19.  The government is wrong.

To be sure, the district court recited, in general terms, the law applicable at sentencing:

> "a defendant bears the burden of production to come forward with evidence to suggest that the presumption is unwarranted in his or her particular case. If the defendant successfully rebuts the presumption, the burden returns to the government . . . [e]ven if the defendant bears his burden, the presumption remains a fact in deciding whether to detain a defendant because it reflects Congress's substantive judgment that particular classes of offenders should be detained prior to trial."

JA89-90; Gov't Br. at 10.

The foregoing language says nothing about what actually matters here: the *meaning* that district court applied to the critical term "presumption."  But we know

---

[1]    The government's "facts" section contains no discussion of the evidence put forward by Mr. Meek.  The government also offers no answer to the fact that it repeatedly argued Mr. Meek was a danger to himself based on the allegation that he said his "life is over," a statement that it is now apparent Mr. Meek did not make. Def. Br. at 3 n.2.

that the district court applied a legally erroneous definition to this term from the district court's own statements.  The court described a "super-presumption" and imposed a heavy burden on Mr. Meek to make a "real strong case" to rebut it. *See* JA70 (referring to a "super-presumption" of detention); JA70 ("It can be rebutted, but there is to be *a real strong case to be made to rebut* this kind of situation."). Even after defense counsel argued that the defendant's burden was is "a very low burden, a limited burden," the district court continued to state an erroneous view that something even greater than a presumption of detention applied in this case.  JA71 (noting that Congress "[came] up with this term, "presumption" and [took] it a step further and talk about the *strong presumption*") (emphasis added). On this record, the Court cannot simply assume—as the government wants it to—that the district court applied the correct legal standard based on its general statements of the law.

The government might have been on stronger footing had the district court made the findings required by the Bail Reform Act: determining whether the defendant carried his low burden to rebut the presumption of detention, and whether the government carried its "high burden" to demonstrate that no set of conditions could reasonably assure the safety of the community. *United States v. Singh*, 860 F. App'x 283, 284 (4th Cir. 2021).  Instead, the district court repeatedly announced an erroneous standard of the presumption and the burden to rebut it, and then failed to make any actual findings as to whether or not those burdens were met, and why.

Although the reason does not matter, the failure to make these findings strongly indicates that the district court proceeded in accordance with an erroneous "super-presumption" of detention.

This Court must therefore vacate the detention order and remand for a new hearing based on the district court's legal errors.

## II.   THE DISTRICT COURT FAILED TO MAKE THE REQUIRED FACTUAL AND LEGAL FINDINGS.

The government argues that the district court made correct findings, Gov't Br. at 19-22, or alternatively the defendant waived any erroneous findings, Gov't Br. at 22-23, or alternatively that any error is harmless.  Gov't Br. at 23.

We address the government's arguments in turn, but begin with this Court's recognition that a when a court starts off with an erroneous view of the governing law, this error taints the factual and legal analysis that follows.  *Miller v. Mercy Hosp., Inc.*, 720 F.2d 356, 361 (4th Cir. 1983) (noting that a district court's erroneous fact-finding can be "induced by an erroneous view of the controlling legal standard.").  As laid out in the opening brief and will be clear from the discussion below, that is what occurred here.

### A.   The district court failed to consider and synthesize all of the evidence pertinent to § 3142(g).

The government stresses the *length* of the district court's findings in arguing that they were sufficient. *See, e.g.,* Gov't Br. at 19 (the decision "contained lengthy

3

findings of facts . . .”; *Id*. at 21 (“The defendant objects that the district court’s lengthy findings were insufficient.”); *Id*. at 22 (“The court provided a lengthy discussion of the facts and its reasons for detaining the defendant, and the defendant does not suggest otherwise.”).  But the issue is not that the court’s findings were insufficiently long; the issue is that they were factually and legally deficient.

The district court’s factual findings were deficient because they focused almost exclusively on the weight and nature of the evidence while ignoring substantial evidence that Mr. Meek presented showing that he would comply with conditions of pretrial release.  A district court errs when it makes factual findings “without properly taking into account substantial evidence to the contrary.” *United States v. Chatmon*, 718 F.3d 369, 375 (4th Cir. 2013) (internal citation omitted).

The government asserts that the district court did not “neglect its consideration of the defendant’s personal characteristics,” Gov’t Br. at 21, but all it can point to is a passing reference to Mr. Meek’s good deeds, which the district court “balanced” against the nature of the charged offense.  *Citing* JA94-95 (referring to Mr. Meek’s contribution to the public good and allowing families to get closure on the death of their loved ones). [2]  The government thus sidesteps the issue, which is that the district

---

[2]      Moreover, given that this was a detention hearing rather than a sentencing proceeding, it is not clear why the district court “balanced” Mr. Meek’s good deeds against the facts of the alleged offense.  While such balancing might be relevant to determining a fair sentence under 18 U.S.C. § 3553, it is not the analysis required to determine whether any set of conditions could ensure the safety of the community under § 3142.

court never accounted for the substantial evidence that Mr. Meek would comply with the conditions of pretrial release.

Before deciding that there was no set of conditions that could reasonably assure the safety of the community, the district court was required to synthesize the evidence of the alleged offense with evidence of Mr. Meek's lack of any criminal record, ties to the area, and his cooperative conduct after the search (including remaining in the area, informing the government of his new address, offering his passport, relinquishing his firearms), including the government's admission that it had no evidence that Mr. Meek committed any crime since April of 2022. See Def. Br. 17-18 (citing types of evidence that can rebut the presumption, accompanied by legal authorities). The district court's failure to engage with these facts and explain why detention was nevertheless necessary was clear error. *See, e.g.*, *United States v. Chatmon*, 718 F.3d 369, 376 (4th Cir. 2013) ("[A] district court need not credit a defendant's evidence or accept his arguments, but its findings should offer some reason why it did not."); *United States v. Wooden*, 693 F.3d 440, 454 (4th Cir. 2012) (holding that while the district court is not required to accept particular evidence, "the court was required to at least consider the evidence, and account for it, when concluding otherwise."); *Doe v. Menefee*, 391 F.3d 147, 164 (2d Cir. 2004) (Sotomayor, J.) ("We have found a district court's factual findings to be clearly

erroneous where the court has failed to synthesize the evidence in a manner that accounts for conflicting evidence or the gaps in a party's evidentiary presentation.").

The government also argues that the court was not required to make specific legal findings with reference to the burdens set forth in the Bail Reform Act. The government claims that Mr. Meek has not "cited any case law—and the government has found none—requiring such findings." Gov't Br.. at 22. But Mr. Meek cited *United States v. Gamble*, 810 F. App'x 7, 8 (D.C. Cir. 2020),[3] a case in which the D.C. Circuit reversed a district court went further than the court below when it "analyzed the factors set forth in 18 U.S.C. § 3142(g), and concluded that they weighed in favor of detention [but] did not adequately explain in view of the entire record why it found by clear and convincing evidence that appellant would obstruct justice in the future, how he would do so, or why no condition or combination of conditions will reasonably assure the safety of the community." Def. Br. at 16-17.

Moreover, the government's professed failure to locate authority requiring specific findings is curious, because this Circuit has addressed the issue numerous times in a variety of contexts such as this one, where important liberty interests are

---

[3]    *Gamble*, 810 F. App'x at 8, cites to *United States v. Stone*, 608 F.3d 939 (6th Cir. 2010), a case that the government cites in its brief, as an example of the individualized findings and explanations that are required. There, the district court made specific findings regarding the parties' respective burdens and whether they satisfied those burdens, and provided a detailed analysis of specific facts as to each of five defendants on all of the § 3142(g) factors in reaching its decision to detain them. *Id*. at 946-954.

at stake. In *United States v. Chatmon*, for example, this Court held that the district erred in ordering the defendant forcibly medicated without following the legal directive to consider less intrusive means, without considering the evidence that less intrusive means were available, and without otherwise explaining its decision to forcibly medicate given the alternatives. *Chatmon*, 718 F.3d at 375–76. In *Wooden*, a civil commitment case, this Court reversed a district court's finding that the defendant lacked pedophilic interests because the lower court disregarded extensive conflicting evidence, and failed to explain *why* it disregarded such evidence in rendering its decision. The Court noted that this cast "real doubt on the propriety of the district court's determination." *Wooden*, 693 F.3d at 454 (quoting *Taylor v. Maddox*, 366 F.3d 992, 1007–08 (9th Cir. 2004) ("The process of explaining and reconciling seemingly inconsistent parts of the record lays bare the judicial thinking process, enabling a reviewing court to judge the rationality of the fact-finder's reasoning.... [F]ailure to take into account and reconcile key parts of the record casts doubt on the process by which the finding was reached, and hence on the correctness of the finding.")); *see also United States v. Arbaugh*, 951 F.3d 167, 178 (4th Cir. 2020) (this Court cannot "substitute [its] assessment of the record for the district court's obligation to explain its rationale in the first instance" with respect to sentencing).

There is no reason why pretrial detention hearings, which involve the potential jailing of individuals who are presumed to be innocent, should be exempt from this Court's requirement that a district court must engage in complete fact-finding and set forth clear, transparent explanation of its decision. The district court's fact-finding and analysis fall short of the standard established by this Court. Although this would require reversal in any case, it is particularly problematic here, where the district court articulated an erroneous legal standard throughout the hearing.

The government trumpets the fact that the district court entered a written order to argue that the district court's findings are sufficient. Gov't Br. at 21. But the district court's written order merely refers to the "reasons stated on the record at the February 26, 2023 hearing." JA98. The order discusses none of the Bail Reform Act factors, sets forth no findings, and does not even contain the ultimate finding that no set of conditions could reasonably assure the safety of the community. *Id*. The order in this case fails to meet the plain terms of § 3142(i), the purpose of which is to "ensure the underlying reasons for a detention order are sufficiently clear to permit appellate review." *United States v. Affleck*, 765 F.2d 944, 954 (10th Cir. 1985); *see also United States v. Clark*, 865 F.2d 1433, 1436 (4th Cir. 1989) ("A detention order must include written findings of fact and a written statement of the reasons for the detention.") (internal citation omitted).

Even where a district court "discussed with clarity" the reasons for issuing a detention order, that court's failure to make written findings of fact and a written statement of reasons for detention was reversible error. *United States v. Turner*, 365 F. App'x 918, 927–28 (10th Cir. 2010). Here, the district court failed to make sufficient findings of fact and to clearly articulate the reasons for detention both orally, and subsequently in its order. Instead of showing the district court's compliance the law, as claimed by the government, the district court's failure to adhere to the clearly stated requirements of § 3142(i) is further evidence that the Court disregarded the requirements of the Bail Reform Act.

For all of these reasons, the government has failed to show that the district court made sufficient factual and legal findings.

### B. Mr. Meek did not "waive" the district court's misapplication of the Bail Reform Act.

The government argues that Mr. Meek "waived" the issues because he did not object after the court announced its decision. This argument is frivolous.

We begin with the cases cited in the government's own brief. In *Hargrove*, this Court held that the defendant waived an argument that the district court's sentence was based on an improper consideration where "[the] claim of error was not addressed at all in Hargrove's earlier arguments in favor of a below-Guidelines sentence [to the district court]." *United States v. Hargrove*, 625 F.3d 170, 184 (4th Cir. 2010). The argument was raised for the first time on appeal. *Id*. In *Elbaz*, the

defendant appealed conditions of supervised release but failed to make any objections to the conditions in the district court. *United States v. Elbaz*, 52 F.4th 593, 611 (4th Cir. 2022).

By contrast, Mr. Meek repeatedly and specifically sought to dissuade the district court from making the errors now raised on appeal. Mr. Meek filed a pre-hearing brief addressing the legal framework, including the limited nature of the presumption, the low burden of production, and the high burden on the government to show that no set of conditions could reasonably assure the safety of the community. JA6-8. He raised the same points at the detention hearing, and revisited the points when the district court appeared to disagree. JA70-71. Both before and during the hearing, Mr. Meek also put forward extensive evidence of his background, his community ties, his community support from members of law enforcement and others, his lack of any criminal record, and his conduct in the eight months since the search of his home. JA37-41.

The government now suggests that Mr. Meek should have raised all of these issues again for a *third* time, after the district court rendered its decision. For good reason, this Court has squarely rejected the government's position. In *United States v. Lynn*, 592 F.3d 572 (4th Cir. 2010), this Court held that:

> The Government seems to contend that to avert plain-error review, a party must object to a perceived error after the district court has rejected the party's arguments. But the Federal Rules of Criminal Procedure reject this formulaic approach. Instead, the Rules expressly provide that a party may preserve a

10

claim of error by informing the court-when the court ruling or order is made or *sought*-of the action the party *wishes the court to take,* or the party's objection to the court's action and the grounds for that objection. Fed. R. Crim. P. 51(b) (emphases added). Thus, the Rules abandon the requirement of formulaic "exceptions"-after the fact-to court rulings. As Judge Easterbrook has explained, Rule 51 does not require a litigant to complain about a judicial choice after it has been made.

*Id.* at 577–78 (internal case law citations and quotation marks omitted). Here, the pretrial release issue "was the subject of extensive argument and evidence" and therefore "[Mr. Meek's] lawyer did not need to argue with the judge once the [decision] had been pronounced." *United States v. Bartlett*, 567 F.3d 901, 910 (7th Cir. 2009).

For all of the foregoing reasons, Mr. Meek did not waive the district court's errors.

**C.    The error was not harmless.**

Next, the government argues that the district court's error was harmless because even if rebutted, the presumption of detention continues to be a factor in the decision. Gov't Br. at 23. The government is wrong.

An error is not harmless where it has a "substantial influence on the outcome of the proceeding." *United States v. Montalvo-Murillo*, 495 U.S. 711, 722 (1990).[4]

---

[4]    In *Montalvo-Murillo*, the defendant failed to receive a timely detention hearing, but the Supreme Court held this error harmless because the defendant was subsequently founddangerous and likely to flee and thus would have been detained anyway.  *Id*.  The defendant did not raise any issue with the district court's dangerousness finding, so the only issue was whether the delay in holding the hearing was prejudicial error.

Here, the district court erred with respect to the controlling presumptions and burdens, and engaged in incomplete fact-finding. It failed to make the necessary legal findings and explain its decision. Any one of these issues is "substantial" and therefore not harmless. *See, e.g.*, *United States v. Ross*, 912 F.3d 740, 746 (4th Cir. 2019) (holding that 18 U.S.C. § 3553(c) requires the sentencing court to adequately explain its imposition of special conditions of supervised release, and that any error in failing to do so "is not harmless"). They are certainly prejudicial in the aggregate.

The government nevertheless argues that the error is harmless because "regardless of whether the district court expressly stated that the presumption was rebutted, the district court would be required to consider the presumption and the various Section 3142(g) factors—which it did." Gov't Br. at 23. This argument makes no legal or logical sense.

First, the government glosses over the fact that the district court was operating on an erroneous understanding of the weight of the presumption—so the fact that it continues to be a factor in the analysis does not render the error harmless. Second, in the government's view, the court's failure to determine whether Mr. Meek rebutted the presumption is of no legal consequence. Gov't Br. at 23 ("[The presumption] still "remains as a factor to be considered among those weighed by the district court.'") (quoting *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010)). But if the government is right, then the defendant's burden to rebut the presumption

12

would be an empty formality with no practical impact on the Bail Reform Act analysis. There would be no reason to require courts to determine whether the defendant rebutted the burden as a first step in the analysis, as the law requires. Contrary to the government's position, courts cannot simply avoid making these findings. "[T] procedures under section 3142 of the Act must be strictly followed as a precondition to detention." *United States v. Clark*, 865 F.2d 1433, 1436–37 (4th Cir. 1989) (cleaned up).

An accurate definition of the presumption of detention, and the defendant's burden to rebut that presumption is a necessary starting point to the correct application of the Bail Reform Act. It follows that an erroneous understanding of these issues has a substantial influence on the outcome and therefore is not harmless.

## III.  THE DISTRICT COURT FAILED MAKE THE NECESSARY FINDING THAT MR. MEEK WOULD BE A DANGER TO THE COMMUNITY IF RELEASED.

The government argues that the district court *did* find that Mr. Meek was a danger to the community going forward.[5]  Gov't Br. at 24. The government relies

---

[5]  The government falsely states that Mr. Meek "omitted" that past conduct could be relied upon to make a finding of future dangerousness. Mr. Meek did no such thing. *Compare* Gov't Br. at 24 ("The defendant argues that a court's finding cannot be "based on evidence that [the defendant] has been a danger in the past," Def. Br. 25, but he omits the most obvious—and critical—part: "except to the extent that his past conduct suggests the likelihood of future misconduct." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (emphasis added)) *and* Br. at 26 ("*Past dangerous conduct is relevant* only to the extent that the government can prove—by clear and convincing evidence—that the defendant is 'likely to continue

on the district court's findings that the alleged past conduct was "broad," "long-standing" and "sophisticated." Gov't Br. at 24-25. The government then blithely asserts that "[a]ll of these factors—*along with the others considered and relied upon by the district court*, clearly indicate that the defendant's wide-ranging and long-running behavior is likely to continue into the future." Gov't Br. at 24-25 (emphasis added).

But what "others"? The crux of Mr. Meek's argument here is that the district court did not transparently consider and explain why it was rejecting the substantial evidence that he would comply with conditions of pretrial release. While we agree with the government that there is no "crystal ball," Gov't Br. at 24, in this case there were over eight months of conduct by Mr. Meek showing his ability and willingness to be cooperative and transparent with the government which should have been considered and accounted for in the district court's decision.

Recognizing that Mr. Meek's actions in the wake of the April 2022 search are problematic to its position that he is a present danger, the government presents a Catch-22: the fact that there is no evidence that Mr. Meek committed any crimes since the April 2022 search, argues the government, "is not the same as saying that the defendant committed no crime during that period. As the government explained

---

to engage in criminal conduct undeterred [ ] by . . . release conditions.' *Dominguez*, 783 F.2d at 707.") (emphasis added).

during the hearing, it has no insight into what the defendant was doing during this period, and its investigation is ongoing." Gov't Br. at 25 citing JA86-87. In other words, the government seeks a presumption of future dangerousness based on the absence of evidence.

The fact that the government had "no insight" into Mr. Meek's actions is not evidence that he committed crimes. Moreover, the lack of "insight" was the government's own choice. Mr. Meek notified the government of his new address, offered his passport, and offered to be cooperative with the government in any other way. JA81. Moreover, Mr. Meek submitted evidence regarding his actions and letters from members of the law enforcement community urging his release. JA44-52. The government's plea of ignorance does not permit the district court to simply ignore the evidence presented by Mr. Meek and assume, with no evidence, that he committed crimes since April of 2022. Such an approach is contrary the government's high burden to show that no set of conditions will reasonably assure the safety of the community.

Finally, the government relies on the *United States v. Salerno*, to argue that the Bail Reform Act sets forth "procedures by which a judicial officer evaluates the likelihood of future dangerousness [that] are specifically designed to further the accuracy of that determination . . . guided by [the] statutorily enumerated factors" in § 3142(g)." Gov't Br. at 25-26 (citing *United States v. Salerno*, 481 U.S. 739, 751

(1987)).  But again, the district court did not follow these procedures, rendering its decision factually incomplete and legally deficient.

More fundamentally, nowhere in the record—not in the oral pronouncement of the decision, nor in the written order—did the district court actually conclude that Mr. Meek was a future danger.  All that can be gleaned is that the district court considered him to have been a danger in the past, which is not sufficient to order detention.

## CONCLUSION

For all of the foregoing reasons, this Court should vacate the district court's order of detention and remand for a new detention hearing in accordance with the Bail Reform Act.

Respectfully submitted,

/s/ Eugene V. Gorokhov
Eugene V. Gorokhov
Burnham & Gorokhov PLLC
1424 K Street, NW, Suite 500
Washington, DC 20005
(202) 386-6920

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[ X ] this brief contains [*4,059*] words.

[    ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2.    This brief complies with the typeface and type style requirements because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated:  <u>February 27, 2023</u>            <u>/s/ Eugene V. Gorokhov</u>
                                                                    *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 27th day of February, 2023, I caused this Memorandum Reply Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Jacqueline R. Bechara
Alexandra Z. Bedell
OFFICE OF THE U.S. ATTORNEY
2100 Jameson Avenue
Alexandria, Virginia 22314
(73) 299-3819

*Counsel for Appellee*

/s/ Eugene V. Gorokhov
*Counsel for Appellant*